UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JASON A. FULLER,

                Plaintiff,

        -vs-                                  13-CV-327-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                Defendant.

---

APPEARANCES: LAW OFFICES OF KENNETH HILLER, PPLC (IDA M. COMERFORD, ESQ., of Counsel) Amherst, New York, for Plaintiff.

WILLIAM J. HOCHUL, JR., United States Attorney (RICHARD D. KAUFMAN, Assistant United States Attorney, of Counsel), Buffalo, New York, for Defendant.

## **INTRODUCTION**

This matter has been transferred to the undersigned for all further proceedings, by order of United States District Judge William M. Skretny dated April 23, 2015 (Item 17).

Plaintiff Jason Fuller initiated this action on April 2, 2013 pursuant to the Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Supplemental Security Income ("SSI") benefits under the Act. Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure (*see* Items 12, 13). For the following reasons, plaintiff's motion is DENIED, and the Commissioner's motion is GRANTED.

**BACKGROUND**

Plaintiff was born on June 4, 1979 (Tr. 223).[1] He protectively filed an application for SSI benefits on July 12, 2010, alleging disability due to pain and headaches, with an onset date of December 1, 2005 (Tr. 223, 228). The application was denied administratively on October 23, 2010 (Tr. 158-161). Plaintiff then requested a hearing, which was held on February 14, 2012, before Administrative Law Judge ("ALJ") Eric L. Glazer (Tr. 89-135). Plaintiff appeared and testified at the hearing, and was represented by counsel.

On February 29, 2012, the ALJ issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 25-37). Following the sequential evaluation process outlined in the Social Security Administration regulations (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found that plaintiff's impairments (psoriasis, transitional L5 vertebra with alleged radiculopathy, possible rotator cuff tear, and chondrocalcinosis of the left knee) while "severe," did not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings") (Tr. 30). Additionally, the ALJ found that plaintiff's depressive disorder and generalized anxiety disorder do not cause more than minimal limitations in the plaintiff's ability to work and are thus non-severe (Tr. 27). The ALJ discussed the evidence in the record, including medical records, reports from treating and consultative medical sources, and plaintiff's hearing testimony, and determined that plaintiff has the residual functional capacity ("RFC") to perform a full range of sedentary work, can occasionally lift and carry ten pounds, is able to sit for about six hours in an eight-hour work day, and can stand and/or walk for two hours in an eight-hour

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner as part of the Answer to the Complaint (Item 7) in this action.

work day (Tr. 35). While plaintiff is unable to climb, the ALJ found that this limitation has little to no effect on the occupational base of unskilled sedentary work (Tr. 36). Using Medical-Vocational Rule 201.24 as a framework, the ALJ determined that plaintiff has not been disabled within the meaning of the Act at any time since the application was filed (Tr. 36-37).

The ALJ's decision became the final decision of the Commissioner on February 8, 2013, when the Appeals Council denied plaintiff's request for review (Tr. 1-5), and this action followed.

In his motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because (1) the ALJ erred in finding that plaintiff's mental impairments were non-severe; and (2) the ALJ erred in his consideration of the report of the consultative examiner. *See* Items 12-1, 15. The government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence. *See* Item 13-1, 16.

## DISCUSSION

### I. Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …." 42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v.*

*Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999). The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts. *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner. *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012). The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. March 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."),

*quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it. *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013). "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II. Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that he suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 1382c(a)(3)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 1382c(a)(3)(B); *see also* 20 C.F.R. § 416.905(a). As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits. *See* 20 C.F.R. § 416.920. First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity. If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. § 416.920(a)(4)(ii); *see also* § 416.909 (duration requirement). If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in the Listings. If the impairment meets or equals a listed impairment, the claimant will be found to be disabled. If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work. *See* 20 C.F.R. § 416.920(a)(4)(iv). If the claimant has the RFC to perform his or her past

relevant work, the claimant will be found to be not disabled. Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires the ALJ to determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC. *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008); 20 C.F.R. § 416.920(a)(4)(v).

The claimant bears the burden of proof with respect to the first four steps of the analysis. If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)). "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience." *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted). If, however, a claimant has non-exertional limitations (which are not accounted for in the Grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …." *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and citation omitted). In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.'" *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

### III. The ALJ's Disability Determination

In this case, ALJ Glazer determined at step one of the sequential evaluation that

plaintiff had not engaged in substantial gainful activity since July 12, 2010, the application date (Tr. 27). At steps two and three, as indicated above, the ALJ found that plaintiff did not have an impairment or combination of impairments that meets or equals the severity of any of the impairments in the Listings (Tr. 27-31). Specifically, the ALJ found that plaintiff's mental impairments - depressive disorder and generalized anxiety disorder - do not cause more than minimal limitations on his ability to perform basic work activities and are thus non-severe (Tr. 27). The ALJ noted only mild limitations in activities of daily living, social functioning, concentration, persistence or pace, and no episodes of decompensation of extended duration (Tr. 27-28).

At step four, the ALJ discussed the medical evidence of record. He found that while plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, his statements concerning the intensity, persistence, and limiting effects of these symptoms were "not credible to the extent they are inconsistent with" the RFC assessment (Tr. 32). The ALJ afforded little weight to the report of consultative examiner Dr. Suzanne Picinich, as it was based primarily on plaintiff's subjective complaints and was internally inconsistent (Tr. 35).

Based on his review of the evidence, the ALJ found that plaintiff has the RFC to perform a full range of sedentary work, except that he cannot climb due to knee problems (Tr. 31). Using Medical-Vocational Rule 201.24 as a framework, the ALJ found that plaintiff would be able to perform substantially all of the exertional demands of sedentary work and thus was not under a disability from the time of the application (Tr. 36).

### IV. Plaintiff's Motion

#### A. Plaintiff's Mental Impairments

Plaintiff argues that the ALJ erred in his step 2 determination that plaintiff's mental impairments were not severe. Consequently, he argues, the ALJ erred in failing to consider those mental impairments at steps 3, 4, and 5 of the sequential analysis. The step 2 severity inquiry serves to "screen out de minimis claims." *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995). "A finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' ... [with] ... 'no more than a minimal effect on an individual's ability to work.' " *Rosario v. Apfel*, 1999 WL 294727, at *5 (E.D.N.Y. Mar.19, 1999) (quoting Social Security Ruling 85–28, 1985 WL 56856, at *3 (SSA)).

Plaintiff underwent a psychiatric consultative examination on October 6, 2010. Plaintiff reported difficulty falling asleep, which he attributed to pain and discomfort. He also reported feelings of hopelessness, fatigue, irritability, and social withdrawal, along with apprehension and worry, short-term memory deficits, and concentration difficulties. Plaintiff denied panic attacks, manic symptomology, and thought disorder (Tr. 316). Dr. Rene Baskin, Ph.D., found plaintiff's thought processes to be coherent and goal-directed, his affect was appropriate, his mood was euthymic, attention and concentration were intact, memory skills were relatively intact, and intellectual functioning was estimated to be in the borderline range (Tr. 317). Plaintiff's socialization revolved around his girlfriend and children. *Id.* Dr. Baskin found that plaintiff had minimal to no limitations in his ability to follow and understand simple directions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks with supervision, make appropriate decisions, and relate adequately with others (Tr. 318). The only limitation noted by Dr. Baskin was a moderate limitation in plaintiff's ability to deal with stress. *Id.*

On October 22, 2010, a State Agency psychiatric consultant found that Plaintiff's depression and anxiety did not result in any marked limitation in his ability to perform work-related mental activities (Tr. 339). In March 2011, plaintiff started treatment at Horizon Health Services. In his initial psychiatric assessment, plaintiff reported anger, irritability, insomnia, poor appetite, and social isolation (Tr. 432). He was alert, his cognitive functions were intact, his insight was good, and he denied suicidal or homicidal ideations. *Id.* His mood was depressed and he was prescribed Effexor and gabapentin. *Id.* In August 2011, plaintiff reported fewer episodes of anger (Tr. 431). In October 2011, plaintiff reported better moods, less depression, but still poor sleep (Tr. 436).

In December 2011, plaintiff underwent an initial mental health assessment at Mid-Erie Counseling. He was alert, oriented, and cooperative (Tr. 448). His mood and affect were euthymic, he was logical and goal-oriented, and reported good sleep and appetite. He denied any suicidal or homicidal ideations, delusions, or hallucinations. *Id.* Plaintiff reported good results on medication with no adverse side effects. *Id.* He was assigned a Global Assessment of Functioning ("GAF") score of 65 which indicates mild symptoms (Tr. 453).[2]

The ALJ applied the "special technique" to determine whether plaintiff's mental impairments were severe. *See* 20 C.F.R. § 416.920a(c). In doing so, he found plaintiff had a mild limitation in activities of daily living and that most of his limitations were related to physical problems, not mental impairments (Tr. 27). In social functioning, the ALJ found

---

[2] GAF is a scale from 0 to 100 that may be used to report the clinician's judgment of the individual's overall symptom severity and the level of his or her functioning. A GAF score of 61–70 indicates a person with some mild symptoms or some difficulty in social, occupational, or school functioning, but who is generally functioning pretty well and has some meaningful interpersonal relationships. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM") IV–TR, at 34 (4th ed., rev. 2000).

a mild limitation. Plaintiff had a girlfriend and visited with his children. *Id.* The ALJ found that plaintiff had mild limitations in concentration, persistence, or pace, based on his problems dealing with stress (Tr. 28). Plaintiff had no episodes of decompensation. *Id.* Accordingly, the ALJ found plaintiff's mental impairments were "not severe." 416.920a(d)(1).

The regulations provide that a "severe impairment" is one, singly or in combination with other impairments, which significantly limits the claimant's physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c); 404.1521(a); 416.920(c); 416.921(a). Having reviewed the medical records, the court finds the ALJ's determination, that plaintiff's mental impairments were non-severe, is supported by substantial evidence. Plaintiff's depression and anxiety were controlled by medication and caused him no limitations in his ability to do basic work activities. As the plaintiff failed to sustain his burden at step two, the ALJ did not err in failing explicitly to consider at step 3 whether plaintiff's mental impairments met the requirements of the Listings. *See* 20 C.F.R. § 416.920a(d)(2) ("If your mental impairment(s) is severe, we must then determine if it meets or is equivalent in severity to a listed mental disorder.") Additionally, at step 4, the ALJ considered the mental and physical demands of plaintiff's previous work in determining that plaintiff was unable to perform his past relevant work as a mover and carpenter (Tr. 36). Finally, at step 5, the ALJ considered all of plaintiff's symptoms in determining plaintiff's RFC (Tr. 31). Accordingly, the ALJ did not err in his consideration of plaintiff's mental impairments.

### B. The Report of the Consultative Examiner

Additionally, plaintiff contends that the ALJ erroneously discounted the report of the consultative examiner, Dr. Suzanne Picinich, D.O. The ALJ gave the report "little weight," finding that it was primarily based on plaintiff's subjective complaints and was internally inconsistent (Tr. 35). Dr. Picinich noted plaintiff's history of knee injury and surgery, psoriatic arthritis and psoriasis, and low back pain (Tr 320). She observed that plaintiff was in no distress, did not need help getting on or off the examination table, and rose from his chair without difficulty. His gait was antalgic, he could not walk on his toes, and could squat only 20% of the way to the floor (Tr. 321). Plaintiff had full flexion, extension and rotary movement of the cervical spine, but reduced flexion of the lumbar spine (Tr. 322). The supine straight leg raise ("SLR") test yielded positive results, yet a seated SLR test yielded negative results on the right and only mildly positive results on the left. *Id.* Plaintiff had full range of movement of his upper extremities, but tenderness at his left knee (Tr. 323). He had full strength in his upper and lower extremities, and full dexterity and grip strength. *Id.* Dr. Picinich found moderate to marked limitations for climbing, bending, squatting, stooping, lifting, and kneeling, and moderate limitations for sitting and standing for long periods, walking, and travel (Tr. 323-24).

The ALJ gave little weight to this report, as it "seems to mainly be based on the plaintiff's subjective complaints" and was internally inconsistent (Tr. 35). While Dr. Picinich found that plaintiff had moderate limitations for sitting and standing, these limitations arise solely from plaintiff's self-reported complaints of low back pain (Tr. 320). She found moderate to marked limitations for lifting, but found full strength in plaintiff's upper extremities and full grip strength and hand and finger dexterity (Tr. 323). The SLR tests

yielded markedly different results, with no explanation or further analysis.

An ALJ should consider "all medical opinions received regarding the claimant." *See Speilberg v. Barnhart*, 367 F.Supp.2d 276, 281 (E.D.N.Y. 2005) (citing 20 C.F.R. § 404.1527(d)). In evaluating medical opinions, regardless of their source, the ALJ should consider the following factors: (1) the frequency of examination and length, nature, and extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) whatever other factors tend to support or contradict the opinion. *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see Speilberg v. Barnhart,* 367 F.Supp.2d at 281 ("factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts") (citing 20 C.F.R. §§ 404.1527(d) and (e)); *House v. Astrue*, 2013 WL 422058, *3 (N.D.N.Y. Feb 1, 2013) ("[m]edical opinions, regardless of the source are evaluated considering several factors outlined in 20 C.F.R. §§ 404.1527(c), 416.927(c)").

In this case, the ALJ properly considered the report of Dr. Picinich, a one-time consultative examiner, and fully explained the basis for the weight he accorded it. Moreover, the RFC determination is consistent with the balance of the medical evidence. In January 2011, plaintiff walked with a normal gait and moved all extremities without significant problems (Tr. 381). In May 2011, examination of plaintiff's lumbosacral spine revealed no tenderness, swelling, or pain, normal strength and tone, and normal posture and gait (Tr. 415). Accordingly, the court finds the ALJ's determination, that plaintiff could do sedentary work with a limitation on climbing, is supported by substantial evidence.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 12) is denied, the defendant's motion for judgment on the pleadings (Item 13) is granted, and the case is dismissed. The Clerk of the Court is directed to close this case.

So ordered.

_____ \s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated: September 1, 2015
p:\pending\2013\13-327.ssi.july27.2015